Minshall, C. J.
The plaintiff below, George Hendricks, commenced an action in the common pleas of the county, to restrain the defendant, a supervisor, from cutting down and removing the hedges and destroying the stone wall of the plaintiff, along a highway in the district of the supervisor. The defendant answered, averring that the hedge and stone wall encroached upon the hig’hway that had long before been laid out and established over *461 the premises where the hedge and wall stands. In reply, the plaintiff admitted that a road had been surveyed through the premises, but denied that it had ever been opened on the line surveyed, but says that it was opened on a line along side thereof, and had been traveled for over twenty-Eve years. After judgment in the common pleas the case was appealed to the circuit court, where, upon the trial, at the request of the defendant, the court found its conclusions of fact and of law separately, as follows :
uFwst — That in the year 1862, the county commissioners of Washington county, by proceedings duly had in accordance with law, duly located and established a public road extending through the premises described in the petition herein, and through premises lying northerly thereof; that through said premises lying northerly the road was about that time actually opened on the line established, and through the premises in dispute, nothing being required to be done for the opening. The travel through that section was over and by way of an old traveled way following substantially the bed of the run near the east line of plaintiff’s premises, which continued to be the state of affairs until about the year 1868, when, upon the petition of one Talbot, the then owner of said premises, the county commissioners aforesaid by a writing signed by them, but of which no official record is found or known to be made, ordered said road, at the point in controversy, to be opened with .its center line upon the division line between the lands of said Talbot and Dorsey, who owned the land lying immediately east thereof, as said road had been originally petitioned for, and that thereupon, in the year 1868, said Dorsey caused the line fence on *462 said division line to be set eastwardly twenty feet, and said road was, at that point, opened forty feet wide, with its center on said division line, and has ever since, until within about two years, past, been maintained, publicly worked and traveled, on that line; that in said year 1868, and after said road was so opened on said division line, said Talbot, plaintiff’s grantor, erected along and near the westerly bank of said run, a substantial wooden structure or wall, at an expense of about $500.00, which wall was between 300 and 400 feet long, and was constructed by first digging a' trench along the bank of the run, and was made of logs laid up— one on the other — bolted together with timber ties extending westward at right angles to said wall of logs and framed or bolted into said wall, constituting with said wall a sort of crib work which was filled up with earth and gravel, and on said wall erected a-three-board fence; that said wooden wall was located so as to inclose with said Talbot’s land twelve to twenty-eight feet in width of the forty feet road as established by said commissioners in 1862, but no part of said road as opened as aforesaid in 1868; that said wooden wall was located upon or near the line of a fence which was there before 1862, arid up to the time of erecting said wall; that in 1875 said wooden wall was washed out and carried away by a great flood, and ’ that thereupon said Talbot erected (substantially upon the line which said wooden wall had occupied) a stone wall four feet high and about three feet thick, and filled in behind it, and to the height of said wall, on its west side, with gravel, and planted a hedge just inside of it; that said stone wall cost about $700.00; that said wooden and stone walls have been continuously maintained ever since 1868 to the pres-' *463 exit time. That said walls were so placed and such exclusive possession maintained under claim of right by said Talbot, and his grantee, said plaintiff, that when said Talbot erected said wooden wall he knew the lines of the location and establishment of said public road as established as aforesaid by the commissioners in 1862.
“ Second — That no proceedings were ever taken for the vacation or abandonment of said public road, as established by the commissioners in 1862, nor was there any vacation or abandonment thereof other than as may result from the fact found in the first finding.
“ Third — That the defendant never threatened to remove or relocate said public road 'and never threatened to open any road over or through the premises described in the petition herein, or to cut down any hedges or to tear down or destroy any stone wall or orchard, or to cut up or injure said premises, except that the defendant did threaten to open to its full width of forty feet the public road as established in 1862, and in so doing would necessarily tear down substantially all of said stone wall and hedges and cut down trees in said orchard. ’ ’ *
As conclusions of law from the foregoing facts the court finds:
uFirst — That the right of the public to that part of the said public road inclosed by said wooden structure and said stone wall has been lost by reason of the adverse possession thereof by plaintiff and his predecessor in title, for the period of more than twenty-oxie years' prior to the institu tion of this proceeding.
“ Second — That the right of the public to that part of the said public road inclosed by said *464 wooden structure and by said stone wall has also been lost by reason of the facts stated in the first finding of facts above set forth. ”
And thereupon the court rendered judgment for the plaintiff, restraining the defendant as prayed for in the petition. The defendant excepted to the conclusions of law, and the judgment of the court therein; and prosecutes this proceeding for the reversal of the judgment, and for judgment in his favor on the facts as found.
It is quite clear, as we think, that the order, found to have been made by the county commissioners in 1868, on the petition of Talbot, the then owner of the land, that the road, as then traveled, should be opened on the line between himself and Dorsey, cannot avail the plaintiff below. There was no authority for the act of the commissioners, and it does hot therefore bind the public. This is settled by the decision in Anderson v. Commissioners, 12 Ohio St., 635.
Nor can it be claimed that the road as established in 1862, became vacated by lapse óf time under section 4668, Revised Statutes. By the construction given to this section in McClelland v. Miller, 28 Ohio st., 489, 503, and in Grove v. Graham, 41 Ohio St., 303, the road, as established by the proceedings, being a traveled way at the time, did not require a formal opening under the order of the commissioners. It did not, therefore, remain “unopened” for anytime from the making of the order, within the meaning of this section. It only applies, as said by Wright, J., in McClelland v. Miller, to roads which have been authorized by the commissioners, but have never in fact been opened.
The conclusion of law that the rights of the public to the portion of the road, inclosed by the *465 wooden structure and stone wall, had been lost by the adverse possession of the plaintiff and his predecessors in title, presents a question about which there is more room for doubt. The general rule is that the statute of limitations does not apply as a bar to the rights of the public, unless expressly named in the statute; for the reason that the same active vigilance cannot be expected of it, as is known to characterize that of a private person, always jealous of his rights and prompt to repel any nvasion of them. But in the cases of The City of Cincinnati v. The First Presbyterian Church, 8 Ohio, 298, and of The City of Cincinnati v. Evans, 5 Ohio St., 594, a different rule was applied; and, in the first case, the right of the city to a portion of. its public square, occupied by the church, and, in the other ease, its right to a portion of one of its streets, encroached upon by the building of the defendant, a private person, was, in each case, held barred by an adverse possession of twenty-one years. But these cases are regarded as exceptional; and confined to municipal corporations in cases where their possession has been disturbed by the erection of large and valuable structures under such circumstances as preclude the idea that the encroachment was simply permissive on the part of the municipality. Thus, in Lane v. Kennedy, 13 Ohio St., 42, where a landowner extended his fences so as to include a portion of the highway, not then used or needed for the public travel, and continued the same for twenty-one years without any objection, it was held that such partial encroachment was not -necessarily adverse to the public, nor inconsistent with its easement,- and therefore constituted no bar to its reclamation by the supervisor, when required by the .public *466 travel. The encroachment in this case was upon a highway within the town of Oxford, and which then formed'part of one of its streets. And Peck, J., in distinguishing the case of Cincinnati v. Evans, observed that, “by a reference to the facts therein stated, it might with equal, if not greater propriety, have been placed upon the ground of an estoppel in pais on the part of the city authorities; the building having been located by the city surveyor and upon lines previously established and built upon.” Again, it is held in McClelland v. Miller, 28 Ohio St., 488, that an encroachment, on a highway, regularly laid out and established, by putting up a fence or planting a hedge within the established limits, does not constitute such, adverse possession as will confer title. After reviewing the previous cases, Wright, J., said: “When roads are laid out and travel is limited, necessity may not require that the whole width should be opened when a less quantity answers every- purpose. But the fact that a portion of the highway remains in the possession of adjoining owners, is merely matter of suffranee, from which rights cannot accrue. If, as in 5 Ohio St., 594, such proprietor should erect permanent improvements upon the ground in question, indicating an intention permanently to appropriate the land, a. question of adverse possession might arise.” He then adds: “A fence is not such permanent improvement. Nor does the fact that a hedge was planted, vary the case. The public have a mere easement for the road. The proprietor still owns the fee, and may use it in any way not inconsistent with the purposes of a road. He may plant trees; he is entitled to the herbage; and the setting out of a hedge entirely comports with his own rights, *467 while it does not conflict with those of the public. ’ ’
More recent cases place the right of the public as against encroachments on its highways, however long continued, on the ground that they are public nuisances, in favor of which the statute of limitations does not run. Section 6921, Revised Statutes, provides among other things, that: “Whoever obstructs or incumbers, by fences, building, structures, or otherwise, any public ground or highway, or any street or alley of any municipal corporation, shall be fined not more than five hundred dollars.” This has been the law from as early as 1857. In Railroad v. Commissioners, 31 Ohio St., 338, the right to maintain an obstruction, the abutments of an overway bridge, that impeded the public travel at the crossing of a highway, was sought to be sustained, against a suit for abatement, on the ground of adverse possession for over twenty-one years. Boynton, J., said: “No principle is more firmly settled at common law, than that no length of time can legalize a public nuisance. This principle has not been distinctly affirmed by any reported case in this state; yet in all cases where an effort has been made to acquire title to a portion of a public highway by adverse possession and enjoyment outside of a municipal corporation, such effort has failed.” And, after a full examination of the question on the authorities, it was there held, that the statute of limitations is not available as a defense in such cases. The case was affirmed and followed in Railroad Co. v. Commissioners, 35 Ohio St., 8.
In view of the cases, and what seems to be the settled law on the subject, it appears to xis that the circuit court erred in its conclusions of law from the facts found, that the landowner in this case, *468 had by adverse possession, acquired the right to maintain his encroachment on the highway. The road was duly laid out and established in 1862. In 1868, Talbot, the grantor of the plaintiff, inclosed a portion of it, by constructing a wooden wall some three hundred feet in length, along the creek. In 1875, this wooden wall was washed out by a flood, which was then replaced by a stone wall, some four feet in height, and a hedge was planted on the inside. But this wooden wall and also the stone wall were built for, and simply answered the purpose of a fence. * It inclosed with the lands of the plaintiff, a substantial portion of the highway. The exigencies of the public travel required that the wall should be removed, and the road opened to its full width. This the supervisor was proceeding to do when enjoined. ■ The wall and hedge constituted an encroachment on the highway, and therefore a nuisance, which could not ripen into a right, however long continued.
Judgment reversed, and petition of the plaintiff below dismissed. '